**VEATCH CARLSON, LLP**
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
700 SOUTH FLOWER STREET, 22nd FLOOR
LOS ANGELES, CALIFORNIA 90017-4209
TELEPHONE (213) 381-2861
FACSIMILE (213) 383-6370

(SPACE BELOW FOR FILING STAMP ONLY)

**KEITH G. WILEMAN, State Bar No. 111225**
kwileman@veatchfirm.com
**S. MARTIN KELETI, State Bar No. 144208**
s.martin.keleti@veatchfirm.com
Attorneys for Defendant
**PHYSICIANS SKIN AND WEIGHT CENTERS, INC.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

DOUGLAS HENDRICKS, M.D., an individual

              Plaintiff,

   vs.

PHYSICIANS SKIN & WEIGHT CENTERS, INC., a California Corporation; and DOES 1-10, inclusive,

             Defendants.

Case No.:
SACV 12-02169 AG (RNBx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT PHYSICIANS SKIN AND WEIGHT CENTERS, INC. FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Complaint Filed: March 27, 2013
Trial Date: March 25, 2014

Date:     Monday, February 24, 2014
Time:    10:00 a.m.
Place:    Courtroom of the Hon.
                 Andrew J. Guilford

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   APPLICABLE PROCEDURAL LAW . . . . . . . . . . . . . . . . . . . . . . . 4

      A.   SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT. . . . . . . . . . . . . . . . . . . . . 4

      B.   SUMMARY ADJUDICATION IS APPROPRIATE WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO A PARTICULAR CLAIM OR DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.   THE PARTIES MAY RELY ON THE EVIDENCE OBTAINED IN THE DISCOVERY CONDUCTED AND ON JUDICIAL ADMISSIONS IN EACH OTHER'S PLEADINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.   THE BURDEN OF PROOF RESTS ON PLAINTIFF TO SHOW THERE IS A TRIABLE ISSUE OF FACT ON THOSE MATTERS FOR WHICH DEFENDANTS HAVE MET THEIR BURDEN OF PRODUCTION. . . 5

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.   PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS BECAUSE OF LACK OF EVIDENCE OF CAUSATION AND DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           1.   Defendant's Use of Plaintiff's Copyrighted Works Is in Advertising, and Thus Damages Are Difficult to Ascertain, If At All. . . . . . . 9

           2.   Roughly Half of Defendant's Business Is Not Affected by Advertising. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           3.   Plaintiff Ascribes the Value of Substantially *All* of Defendant's Profits Advertising. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.   PLAINTIFF'S LANHAM ACT CLAIM FOR FALSE DESIGNATION OF ORIGIN HAS NO MERIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.   PLAINTIFF'S THIRD AND FOURTH CLAIMS FOR RELIEF FOR UNFAIR COMPETITION UNDER STATE COMMON LAW AND STATUTORY LAW HAVE NO MERIT. . . . . . . . . . . . . . . . . . . . . 16

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii

# TABLE OF AUTHORITIES

Page

## UNITED STATES CONSTITUTION

U.S. Const. art. I § 8, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. Const. art. I, § 8, cl. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


## FEDERAL CASES

*Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir. 1988), *aff'd on other grounds*, 495 U.S. 207 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232(2d Cir. 1974) . . . . . . . . . 15

*American Nurses Ass'n v. Illinois*, 783 F.2d 716 (7th Cir. 1986) . . . . . . . . . . . . . . . 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . 4

*Andreas v. Volkswagen of Am., Inc.*, 210 F. Supp. 2d 1078 (N.D. Iowa 2002), aff'd, 336 F.3d 789 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 16

*Cream Records v. Joseph Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985) . . . 9, 10

*Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2d Cir. 1985) . . . . . . . . 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) . . 5, 14

*Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) . . . . . . . . . . . 9

*Lockwood v. Wolf Corp.*, 629 F.2d 603 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 5

*Mackie v. Reiser*, 296 F.3d 909 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) . . . . . . . 7

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) . . . . . . . . . . . . . . . . . . . . . . 9

*Sebring Pottery v. Steubenville Pottery Co.*, 9 F. Supp. 384 (N.D. Ohio 1934) . . . . . 9

*Sheldon v. Metro–Goldwyn Pictures Corp.*, 309 U.S. 390 (1940) . . . . . . . . . . . . . . . 8

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89 (2d Cir. 1985)  . 9

*Thornhill Publishing Co. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . 6

*Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981) . . . . . . . . . . . . . . 15

*Trade-Mark Cases*, 100 U.S. 82 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) . . . . 6

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) . . . . . . . . . . . . . 5

*Walker v. Forbes, Inc.*, 28 F.3d 409 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230 (D. Colo. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL STATUTES**

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 1121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 15

17 U.S.C. § 101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 U.S.C. § 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 U.S.C. § 504(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28 U.S.C. § 1338(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL RULES**

FED. R. CIV. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FED. R. CIV. P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

FED. R. CIV. P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FED. R. EVID. 801(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**CALIFORNIA STATUTES**

CAL. BUS. & PROFS. CODE § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 16

iv

**STATE CASES**

*USM Corp. v. Marson Fastener Corp.*, 467 N.E.2d 1271(Mass. 1984) . . . . . . . . . . . . 9

# I.

## INTRODUCTION

Plaintiff Douglas Hendricks, M.D. is a Newport Beach plastic surgeon, whose practice is largely focused on cosmetic procedures. Defendant Physicians Skin and Weight Centers, Inc. is a medical group which concentrates on noninvasive and minimally invasive aesthetic procedures; most of its doctors are not plastic surgeons, because one of the procedures which constitutes a substantial portion of its practice, laser liposuction, does not require that medical specialization.

Laser liposuction revolutionized the liposuction business by using a laser to break down the fat being removed, enabling its easier removal and reducing the pain and recovery time involved. Plaintiff was one of the early adopters of the technology. Plaintiff took some before-and-after photographs of patients on whom he performed procedures, and this action involves one pair of those images of a laser liposuction patient, focused on the patient's lower abdominal, gluteal and thigh area.

Cynosure, Inc., is one of the leading manufacturers of lasers used in laser liposuction, and it uses the trademark SmartLipo® (the registrant is El.En. S.p.A,, an Italian corporation which is Cynosure's largest shareholder). Plaintiff gave the subject photos to Cynosure to use in its advertising and marketing materials, provided it credited him by name and location. Although there was no formal license agreement, plaintiff has benefitted: Cynosure has compensated plaintiff for his photos and speaking engagements with free and discounted equipment. Cynosure has used the subject photos extensively, including in brochures and videos distributed to be displayed in physicians' waiting rooms, where it demonstrates the results which can be achieved using the equipment it manufactures..

When defendant acquired Cynosure equipment and started performing laser liposuction, it began an advertising campaign, both online and through the use of billboard advertising. Defendant believed that it could use the subject photos from Cynosure, and many (although not all) of defendant's billboards did (at times defendant

used a stock photograph it licensed of a model's waist with a tape measure, and later defendant used before and after photos of one its own patients, although it used the subject photos the most frequently).

Defendant began using the subject photos in the second half of 2009, and completely ceased by the end of 2012. The number, size, and location of the billboards varied, but was largely limited to Northern California, where defendant is based. Defendant has locations in the Sacramento area (Folsum and Roseville), the South San Francisco Bay area (Campbell), and Fresno. Over time, defendant's business has expanded from a single location to the current four. In the second half of 2012, defendant attempted to establish another location in Irvine, but after approximately six months, it abandoned the effort because it was not profitable, largely because of the combination of the highly competitive local market (the large number of providers in the area has led to lower prices) and the expensive media market (a large population in a metropolitan area drives up the cost of advertising media there).

Plaintiff alleges that he discovered a billboard containing the subject photographs at the juncture of the SR-55 and I-405 freeways promoting the services of defendant in and around September 2012. He alleges that in addition to infringing his copyright, defendant's use of the subject photos creates a false association between his medical practice and defendant, which causes confusion, mistake, or deception amongst consumers as to the source, quality and nature of plaintiff's goods and services, and thus constitutes false designation of origin under the Lanham Act, unfair competition under California common law, and unfair competition prohibited by California's statutory Unfair Competition Law ["UCL"], CAL BUS. & PROFS. CODE § 17200 *et seq.* On October 26, 2012, plaintiff submitted a copyright application to register the photographs as works of visual art with the U.S. Copyright Office. At the time of the filing of the complaint, the copyright application was still pending.

## II.

## PROCEDURAL HISTORY

Plaintiff instituted this action by filing a complaint on December 14, 2012. The parties have engaged in discovery, including taking each other's depositions. The parties have disclosed their expert witnesses. Plaintiff disclosed an accountant, Henry Kahrs, whose report includes opinions regarding the profits attributable to defendant's alleged copyright infringement. Defendant named two rebuttal experts, David J. Weiner, an economist, and Bruce Silverman, an advertising expert. Because the Court's order permits depositions of experts to take place after the discovery cut-off date, and the parties had scheduled a mediation session to take place on January 9, 2014, the parties have not yet deposed each other's expert.

Although plaintiff's designee has no expertise in advertising, he nevertheless opines as to causation, by assuming that advertising is the cause of defendant's profits. While plaintiff does not dispute the propriety of Mr. Weiner's testimony to rebut plaintiff's expert, plaintiff contends that Mr. Silverman's testimony goes beyond the scope of rebutting Mr. Kahrs' testimony, and therefore plaintiff is making a motion to exclude Mr. Silverman's testimony. Conversely, defendant seeks to exclude Mr. Kahrs' testimony because it is based on nothing more than conjecture and speculation.[1] Because plaintiff has no other evidence of causation, defendant should prevail on summary judgment, or at least summary adjudication on one or more claims.

---

[1] Plaintiff's expert makes various assumptions that are not only unsubstantiated, but are wrong, for example: (1) he assumes that all of defendant's profits during the years at issue were solely attributable to the alleged infringement, ignoring the fact that defendant was increasingly profitable before the alleged infringement, and the fact that often defendant's advertising was not at all infringing; (2) he assumes that none of defendant's profit results from referrals and repeat business from existing patients (as it does for plaintiff as well), and thus from patients for whom advertising has no effect; and (3) he assume that the only impact of the billboards at issue and thus all the purported profits are attributable to the subject photos, and not to defendant's telephone number and website address or the important trademark SmartLipo®.

**Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment**

### III.

### APPLICABLE PROCEDURAL LAW

A.   SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT.

Upon a showing that there is no genuine issue of material fact as to a particular claim or defense, the court may grant summary judgment in the party's favor "upon all or any part thereof." FED. R. CIV. P. 56(a) & 56(b). The moving party bears the initial burden of identifying admissible evidence, such as deposition testimony and affidavits, that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). An issue of fact is a genuine issue only if it reasonably can be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). If the moving party meets its burden, the burden shifts to the nonmoving party to establish a genuine issue of material fact requiring a trial. *Id.* at 325. However, "only disputes over facts that might affect the outcome of the suit will properly preclude entry of summary judgment." *Anderson*, 477 U.S. at 248.

B.   SUMMARY ADJUDICATION IS APPROPRIATE WHERE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO A PARTICULAR CLAIM OR DEFENSE.

The procedure for granting summary judgment on only a particular claim among many, only part of a claim, or an affirmative defense is commonly referred to as a "partial summary judgment," *American Nurses Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986), although because it is neither a "judgment" nor is it appealable, it is a misnomer; "summary adjudication" is a better name for it. In the event that the Court cannot dispose of each of plaintiff's claims in their entirety, in can and should do so for the remainder.

4

C.   THE PARTIES MAY RELY ON THE EVIDENCE OBTAINED IN THE DISCOVERY CONDUCTED AND ON JUDICIAL ADMISSIONS IN EACH OTHER'S PLEADINGS.

"The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Admissions in the opposing party's pleadings, even if unverified, are admissible evidence, and therefore can serve as the basis for summary judgment. FED. R. EVID. 801(d)(2); *Lockwood v. Wolf Corp.*, 629 F.2d 603 (9th Cir. 1980). Defendants also submit the portions of transcripts of depositions (excerpts of which are included in the Declaration of S. Martin Keleti, but identified in citations by the deponent's last name and the suffix "Depo.") and discovery responses, in addition to relying on plaintiff's own complaint ("Compl.").

D.   THE BURDEN OF PROOF RESTS ON PLAINTIFF TO SHOW THERE IS A TRIABLE ISSUE OF FACT ON THOSE MATTERS FOR WHICH DEFENDANTS HAVE MET THEIR BURDEN OF PRODUCTION.

"[T]he non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). The opposing party may not rest on its pleadings, Although Rule 56(d) authorizes courts to defer consideration of dispositive motions or allow time to obtain affidavits or declarations, this motion comes after the discovery cut-off date, so all parties have had ample opportunity to take discovery. Plaintiff cannot claim defendant's motion is premature.

To survive summary judgment, a copyright infringement plaintiff seeking to recover indirect profits (such as profits from advertising) must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement. *Frank Music Corp.*

*v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985).

## IV.

## ARGUMENT

Plaintiff seeks relief on four different legal theories: copyright infringement, 17 U.S.C. § 101 *et seq.*; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; and statutory unfair competition under the UCL.

For monetary relief, i.e., damages, plaintiff seeks defendant's profits, and the only evidence on this subject plaintiff has comes from plaintiff's expert, and that evidence lacks foundation; the Court should exclude such evidence, leaving no evidence at all. Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. See, e.g., *Thornhill Publishing Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979); *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2d Cir. 1985). Therefore, the Court should grant summary judgment (or at least summary adjudication) for defendant.

A.   <u>PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS BECAUSE OF LACK OF EVIDENCE OF CAUSATION AND DAMAGES.</u>

The copyright measure of damages is plaintiff's actual damages (e.g., from lost sales, or the diminution of the value of the copyright in the work) and defendant's profits *attributable to the infringement*, to the extent that the two are not duplicative. 17 U.S.C. § 504(b); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) The Copyright Act also provides for statutory or so-called "in-lieu" damages (because actual damages can be notoriously difficult to prove, if they even exist at all), and authorizes an award of attorney fees as part of the costs of the prevailing party; these two remedies, however, are only available if the copyrighted work is registered prior to the infringement taking place, 17 U.S.C. § 412, and thus are not available in this case

6

because plaintiff applied to register the copyright after the alleged infringement began.

Defendant propounded an interrogatory in which plaintiff was asked what his damages are and how he calculated them, and he responded that they consisted defendant's profits, the amount of which he did not yet know. Keleti Decl. Exs. C & D (Interrogatory No. 24). During plaintiff's deposition, defendant also asked plaintiff about his financial information, in order to ascertain any lost profits, but it became apparent that plaintiff has no knowledge of any. Lastly, plaintiff's expert opines about defendant's profits allegedly attributable to defendant's infringement, but not plaintiff's lost profits, so by implication, there are none, and plaintiff is not claiming any.

Therefore, plaintiff's damages are limited to defendant's profits *attributable to the infringement*. The only evidence plaintiff has regarding causation and damages is his expert's opinion, which essentially *assumes* causation, by attempting to find a correlation between defendant's advertising expenses and defendant's profits, and thus attributing defendant's profits to the alleged infringement. This is the basis not only for the instant motion by defendant for summary judgment, but to *exclude* the testimony of plaintiff's expert, whether or not there is a trial on the merits.

This case all comes down to damages, and because the damages are those *attributable* to the alleged infringement, much of the heavy lifting in this domain inheres in sophisticated analysis of causation. *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1244 (D. Colo. 2008). Initially, plaintiff has only the burden of proving income; defendant has the burden of proving deductible expenses, 17 U.S.C. § 504(b). The statute, however "creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004) (approving a jury instruction stating: "Indirect profits have a less direct connection or link to the infringement. Plaintiff seeks indirect profits in this case. To

7

recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.").

As one court expressed it:

> The defendant's burden under the apportionment provision of Section 504(b) is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff. *See Walker* [*v. Forbes, Inc.*]*,* 28 F.3d [409] at 412 [(4th Cir. 1994)] (describing Section 504(b) as "a rule of causation"). Because the rebuttable presumption of causation represents a presumption as to both cause-in-fact and proximate cause, there are two avenues of attack available to a copyright defendant. First, the defendant can attempt to show that consumers would have purchased its product even without the infringing element. *See, e.g., id.* at 413 (holding that district court properly allowed the defendant to show that an unauthorized reproduction of a photograph in an issue of its magazine had no causal relation to "amounts of revenue ... committed to the issue sight unseen"). Alternatively, the defendant may show that the existence and amount of its profits are not the natural and probable consequences of the infringement alone, but are also the result of other factors which either add intrinsic value to the product or have independent promotional value. *See, e.g., Sheldon v. Metro–Goldwyn Pictures Corp.,* 309 U.S. 390, 407–08, 60 S.Ct. 681, 687–88, 84 L.Ed. 825 (1940) (approving apportionment where profits of defendant's film were largely attributable not to the plaintiff's pirated story but rather to the "drawing power" of the star performers and the artistry of others involved in the creation of the film); *Abend v. MCA, Inc.,* 863 F.2d 1465, 1480 (9th Cir. 1988) (remanding for apportionment where factors other than the underlying story—particularly the talent and popularity of Alfred Hitchcock, Jimmy Stewart, and Grace Kelly—"clearly contributed" to the success of the film "Rear Window"), *aff'd on other*

8

*grounds,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990); *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89, 96 (2d Cir. 1985) (apportioning profits from sales of "Celebrity Skin" magazine where promotional cover contained not only infringing photograph of Raquel Welch but also a list of other nude celebrity photographs contained within); *Cream Records* [*v. Joseph Schlitz Brewing Co.*]*,* 754 F.2d [826] at 828–29 [(9th Cir. 1985) (per curiam)] (upholding apportionment of profits from malt liquor sales apparently based on popularity of noninfringing product and promotional value of noninfringing elements of defendant's commercial); *cf. USM Corp.* [*v. Marson Fastener Corp.*], 467 N.E.2d [1271] at 1277 [(Mass. 1984)] (trade secrets; recognizing that apportionment would have been proper if defendant had demonstrated that factors such as "management skill" or "capital investment" had contributed to the success of its product). Grumman apparently wished to tread the second path, and it was unquestionably entitled to do so

*Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1171, 1175 (1st Cir. 1994) (footnotes omitted) (disapproved on other grounds, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 n.2 (2010)). For the reasons which follow, there is no evidence of damages, and in particular, of causation.

        1.    <u>Defendant's Use of Plaintiff's Copyrighted Works Is in Advertising, and Thus Damages Are Difficult to Ascertain, If At All.</u>

Actual damages are particularly difficult to ascertain to the extent that the value of the copyrighted work resides not in its intrinsic value, but rather in its tendency to promote sales of other products. *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 404 (S.D.N.Y. 2002) ("As such, Getaped's ability to establish a causal connection is difficult"); *Sebring Pottery v. Steubenville Pottery Co.*, 9 F. Supp. 384 (N.D. Ohio 1934). Defendant is not selling copies of plaintiff's photographic works, in contrast with the typical infringer of cultural works (such as literary works, musical works, audiovisual

9

works, sound recordings, or pictorial, graphic, or sculptural works, which are embodied in such media as books, periodicals, CDs, DVDs, posters) or computer software, which is embodied in such media s discs; rather, defendant's use of plaintiff's photos are used in advertising its own aesthetic surgical procedures. Modern cases frequently deny profits earned by advertising. For example, the Ninth Circuit has denied profits earned from advertising. *Mackie v. Reiser*, 296 F.3d 909, 914-15 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003).[2] Similarly, this Court should do the same in this instance. The causal link is too tenuous.

2. Roughly Half of Defendant's Business Is Not Affected by Advertising.

A substantial amount of defendant's clientele are existing patients or referrals. The same is true in plaintiff's experience as well, so it should come as no surprise to him, and it comports with common sense. As to these types of patients, therefore, defendant's profits are not attributable to the infringement. As department store magnate John Wanamaker once put it "I know that half the money I spend on advertising is wasted; the trouble is I don't know which half." The money is wasted because it is unnecessary to generate some sales. Therefore, roughly half of defendant's profits are not attributable to advertising at all, let alone any infringing element of the advertising. Plaintiff's expert ignores this fundamental point, and assumes, without foundation, that all of defendant's business comes from advertising.

3. Plaintiff Ascribes the Value of Substantially *All* of Defendant's Profits Advertising.

The expert plaintiff has designated is an accountant, neither an economist nor an expert on advertising. Plaintiff's expert attempts to correlate defendant's advertising with defendant's profits, using extremely flawed methodology. He uses a linear regression

---

[2]     Although the Ninth Circuit had earlier let stand a case, *Cream Records*, *supra*, in which the district court had awarded plaintiff indirect profit damages, the Ninth Circuit did not pass judgment on that issue, due to the procedural posture of review.

analysis, which is not scientific proof of causation. The correlation is weak. In other words it does not demonstrate a significant relationship between revenues (profits) and advertising dollars spent, let alone causation.

The report of plaintiff's expert provides insight into his "analysis of advertising expenses and revenue" which led to his speculative result. At page 2 of his report he points out that an important piece of data he reviewed includes e-mails between defendant and a billboard company. One states: "The CBS Billboard on Business [I-]80 has generated over 30 calls in the last one week"—calls in one week out of more than 200 weeks analyzed; this provides no pertinent information at all. Therefore, plaintiff will assert that if there were 30 calls in one week, there must be a causal relationship between advertising and calls, and a further causal relationship between calls and profits. His position appears to be that because defendant tracked the number of calls for some period of time, there must be a causal connection between the subject photos and defendant's profits. To begin with, did a single call result in a liposuction procedure and thus profit for defendant? Were these 30 calls made during the first week when a particular billboard was up, when one would expect it to be noticed more, or later in the month, when attention is expected to be less? The expert has not documented that a single call, even if it could somehow be related to the photos in issue, resulted in profits. Plaintiff's expert has not attempted to answer these and many other questions, but simply tosses out bits and pieces of information in a poor attempt to establish causation.

Plaintiff's expert goes on in his "analysis" to explain that he understands from other e-mails that defendant tracks its calls. The reality is that defendant's attempt to track such information was quickly abandoned as impractical, but even if it were correct, the expert admits: "…we have not received this data to date."

These two pieces of non information lead off the "Analysis" section of the report. They make it clear that this entire exercise is without foundation. There is no analysis, since there is no more than a few snippets of information to analyze, and the attempt to utilize a statistical evaluation is equally unavailing for the reasons described.

11

Plaintiff's expert contends that 92% of total revenues (profits) are generated from advertising, and therefore from plaintiff's photos.[3] There is no basis for the particular fraction, and there are host of errors which flow from the assumption that there is a linear relationship between advertising expense and profits; in addition to the error identified above (roughly half advertising unneeded):

• It does not differentiate between the infringing and noninfringing elements of the billboards,[4] and more generally between infringing advertising and forms of advertising that do not use the photos at all. While graphics might enhance the effectiveness of a billboard ad, the name and telephone number of the advertiser, as well as the SmartLipo trademark, were critical features of effective advertising, without which the photos would have no value at all. At times, defendant used other photos, a fact not taken into account. Moreover, billboards were only part of defendant's advertising program.

• It assumes that all advertising expenses are equally cost efficient and effective; it does not take into account law of diminishing returns. The incremental cost

---

[3]    In *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983), the Court explained that the fact that a defendant's infringing products represent 2 percent of its total inventory does not necessarily mean that its gross revenues attributable to infringement equal 2 percent of its gross revenues from the sales of all of its products. "If General Motors were to steal your copyright and put it into a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." The reason such proof would fail is that actionable damages must be direct, rather than remote, and that an appropriate apportionment must be made between revenue attributable to infringement and other revenue. Plaintiff's expert does roughly the equivalent of what *Taylor* prohibits.

[4]    *Sheldon v. Metro-Goldwyn-Mayer Pictures, Co.*, 309 U.S. 390, 406 (1940), "The controlling fact in the determination of the apportionment was that the profits had been derived, not from the mere performance of a copyrighted play, but from the exhibition of a motion picture which had its distinctive profit making features, apart from the use of any infringing material." Here, plaintiff's expert ignores critical information that makes his conclusions speculative.

**Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment**

or volume of additional ads does not increase revenue proportionately. Also, a billboard has a much greater impact initially, but since the impact lessens over time, so does the revenue it is likely to generate.

• It does not differentiate among different procedures offered, lumping them together regardless of whether the photos are used to advertise them, or their different profit margins. So, for example, plaintiff's expert treats laser skin resurfacing, laser hair removal, and nonsurgical laser body sculpting procedures the same as the laser liposuction procedure at issue. Such data was not available, but plaintiff's expert ignores their importance altogether.

• It further does not distinguish between cash and accrual methods of accounting; it compares profits with the amount of money expended on advertising, without respect to when the advertising actually occurred. It also uses an unexplained three-month lag in performing the calculations based on the (faulty) cash method.

• It ignores the fact that defendant's income and profits were increasing significantly in the nearly two years before defendant began using the image and presumably this upward trajectory would have continued, so not all revenues and profit could possibly be related to use of the subject photos, as plaintiff's expert opines.

• It ignores the sales process that a potential customer—in this context, cosmetic surgery—goes through before undergoing surgery (careful research, talk to doctors, etc.), so the importance of billboards and the photos is reduced.

• It does not take into account the intrinsic value of the services received, and ascribes all their value to the intellectual property infringed in advertising. Defendant is not selling copies of the copyrighted work that's being sold, but the value of the copyrighted work (if any) resides in its tendency to promote sales of other products or services. This case is unlike that of a plagiarized book or a sampled piece of music.

Except in highly targeted advertising whose response can be tracked, e.g. certain kinds of direct mail, it is virtually impossible to draw any conclusion between advertising and profit. This is particularly true for billboards, which constitute a "reminder" form of

13

advertising. Thus some cases deny profits earned from advertising.[5] Even those cases which have permitted recovery for advertising, such as *Andreas v. Volkswagen of Am., Inc.*, 210 F. Supp.2d 1078 (N.D. Iowa 2002), aff'd, 336 F.3d 789 (8th Cir. 2003), where a jury awarded $570,000 of Audi's profits for the infringement of plaintiff's text, there are limits: the amount of damages represented only 10% of the profits for the specific model of the car being advertised, and the Eighth Circuit did not permit recovery of profits from other Audi models.

## B.   PLAINTIFF'S LANHAM ACT CLAIM FOR FALSE DESIGNATION OF ORIGIN HAS NO MERIT.

The Lanham Act creates a system for federal registration of trademarks, and while § 32 [15 U.S.C. § 1114] imposes liability for infringement of federally-registered marks, § 43(a) [15 U.S.C. § 1125(a)] extends liability to infringement of unregistered marks; Section 43(a) has two prongs: trademark infringement and false advertising. Section 43(a)(1)(A) prohibits the use of any word, name, symbol or device (or combination thereof), or any false designation of origin, which is like to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. This is the offense plaintiff alleges. Comp. ¶ 30.

Marks may remain unregistered because the owner of the mark has not taken advantage of the registration system; also, trade names are not eligible for registration. Plaintiff alleges that his photographs are a designation of origin, and maintains that his name crediting the photos is part of the designation. But in any event § 43(a) is limited

---

[5]   "[O]ur holding [in *Frank Music Corp. v. Metro–Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1983)] strongly implied that a district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits. Such an approach dovetails with common sense—there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." *Mackie*, *supra*, 296 F.3d at 914-15.

to unregistered marks and names where there is some impact on commerce which Congress can regulate (i.e., interstate commerce or international commerce), because that is the basis for federal question subject matter jurisdiction under the § 39(a) of the Lanham Act, 15 U.S.C. § 1121(a); 28 U.S.C. § 1338(a), since the Constitutional authority for the Lanham Act is the Commerce Clause, U.S. Const. art. I § 8, cl. 3 (Congress passed the Trade Mark Act of 1881, which was based on the Commerce Clause power, in response to the *Trade-Mark Cases*, 100 U.S. 82 (1879), which held that the Copyright Clause of the Constitution, U.S. Const. art. I, § 8, cl. 8, gave Congress no power to protect or regulate trademarks). Considering that both plaintiff and defendant are in California, the connection to interstate commerce is attenuated at best, and the lack of connection to interstate commerce alone would be reason to dismiss the second claim.

Even if the requirement of interstate commerce is met, as the Second Circuit observed, § 43(a) "does not have boundless application as a remedy for unfair trade practices." *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232(2d Cir. 1974). The Ninth Circuit echoed this, when it noted that § 43(a) "does not prohibit a broad range of acts defined as unfair competition law of many states," *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981).

The most crucial issue for the Lanham Act claim, however, as with the copyright infringement claim, remains damages, and causation is part of that issue. The Ninth Circuit has emphasized that plaintiff must prove a causal relation between the deceptive advertising and some damage to plaintiff. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989). Where plaintiff presents no evidence of lost profits and no evidence of actual consumer deception, plaintiff fails to prove injury resulting from defendant's allegedly deceptive advertising. Compared to the showing necessary to obtain an injunction, a higher standard of proof is required to obtain damages. Plaintiff must prove that at least some customers were actually deceived, and that plaintiff has been injured by reason of actual consumer reliance on the false advertising. Such actual deception and resulting customer reliance can be proven either be evidence of actual

diversion of sales to defendant, but actual deception can be shown by customer surveys or by testimony of a dealer, distributor or customer. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). Plaintiff has no evidence of any kind regarding actual confusion and lost profits; as noted above, plaintiff focuses solely on defendant's profits.

C.   PLAINTIFF'S THIRD AND FOURTH CLAIMS FOR RELIEF FOR UNFAIR COMPETITION UNDER STATE COMMON LAW AND STATUTORY LAW HAVE NO MERIT.

In contrast to the first two claims for relief, which arise under federal statutory law, plaintiff's third claim for relief arises under California common law, although the acts allegedly giving rise to the claim are identical to those of the federal claims, whose allegations are incorporated by reference, Compl. ¶ 34, and repeated, *id.* ¶ 37, even including a reference to *interstate* commerce, *id.* ¶ 36. The additional allegations consist mostly of alleging that the business practices are fraudulent, *id.* ¶¶ 38 & 39, and alleging malice in order to entitle plaintiff to punitive and exemplary damages. fees, *id.* ¶ 40-45. Plaintiff's fourth claim for relief is based on a California statute known as the Unfair Competition Law

Most courts, however, in analyzing a claim of infringement based on both federal and state law, will apply to both a single analysis of the cornerstone issue, likelihood of confusion, *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."), so the third and fourth claims for relief do not differ from the second claim for relief *except* for the statutory remedies under California law. If there is no liability, however, it is irrelevant that there is a greater panoply of remedies.

# V.

## CONCLUSION

The Court should grant defendant's motion for summary judgment in its entirety, or at least order summary adjudication of one or more of plaintiff's four claims for relief in defendant's favor, in particular the first claim for copyright infringement, because plaintiff has no evidence regarding causation, only a presumption which has been amply rebutted.

Dated: January 27, 2014

Respectfully submitted,

**VEATCH CARLSON, LLP**

By:  /s/ S. Martin Keleti
**S. MARTIN KELETI**
Attorneys for Defendant **PHYSICIANS SKIN AND WEIGHT CENTERS, INC.**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 700 South Flower Street, 22nd Floor, Los Angeles, California 90017-4209.

On January 27, 2014, , I served the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT PHYSICIANS SKIN AND WEIGHT CENTERS, INC. FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** on the interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

## SEE ATTACHED SERVICE LIST

_____   **BY MAIL** (C.C.P. §§ 1013a, *et seq.*)**:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

X \_\_\_\_\_   **CM/ECF SERVICE** I served the above documents by means of the Court's CM/ECF service

_____   **BY PERSONAL SERVICE** (C.C.P. §§ 1011, *et seq.*)**:** I delivered such envelope(s) by hand to the offices of the addressee(s).

_____   **BY FACSIMILE TRANSMISSION** from Facsimile No. (213) 383-6370 to the fax numbers listed below. The facsimile machine I used complied with Court Rule 2.306. Pursuant to Rule 2.306, I caused the machine to print a transmission confirmation report that showed the document was transmitted complete and without error and a copy is attached.

_____   **BY EXPRESS MAIL** (C.C.P. §§ 1013(c)(d), *et seq.*): I caused said document(s) to be deposited with an express service carrier in a sealed envelope designed by the carrier as an express mail envelope, with fees and postage prepaid.

_____   **BY REGISTERED MAIL** (C.C.P. §§ 1020, *et seq.*): I caused said document(s) to be deposited with the United States Mail, postage prepaid, return receipt requested, signed by the addressee that said documents were received.

_____   **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

X \_\_\_\_\_   **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 27, 2014 at Los Angeles, California.

/s/ S. Martin Keleti
S. MARTIN KELETI

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **SERVICE LIST**

Eric M. Schiffer, Esq.
William L. Buus
Schiffer & Buus, APC
3070 Bristol Street, Suite 530
Costa Mesa, California 92626
Email:  eschiffer@schifferbuus.com
           wbuus@schifferbuus.com
Telephone: 949.825.6140
Facsimile: 949.825.6141
Attorneys for Plaintiff Douglas Hendricks, M.D.

Andres F. Quintana, Esq.
John M Houkom, Esq.
Quintana Law Group APC
26135 Mureau Road Suite 101
Calabasas, California 91302
Email:  andres@qlglaw.com
           john@qlglaw.com
Telephone: 818.914.2100
Facsimile: 818.914.2101
Attorneys for Defendant Physicians Skin and Weight Centers, Inc.

19