Eric M. Schiffer (SBN 179695)
William L. Buus (SBN 180059)
SCHIFFER & BUUS, APC
3070 Bristol Street, Suite 530
Costa Mesa, California 92626
Telephone:   (949)825-6140
Facsimile:   (949)825-6141
Email:       eschiffer@schifferbuus.com
             wbuus@schifferbuus.com

Attorneys for Plaintiff,
DOUGLAS HENDRICKS, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS HENDRICKS, M.D., an individual,<br><br>              Plaintiff,<br><br>     vs.<br><br>PHYSICIANS SKIN & WEIGHT CENTERS, INC., a California Corporation; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.:  8:12-cv-02169-AG-RNB<br><br>Complaint filed:  December 14, 2012<br>Trial Date:        March 25, 2014<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES BY PLAINTIFF DOUGLAS HENDRICKS, M.D. IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date:        February 24, 2014**<br>**Time:        10:00 a.m.**<br>**Crtrm:       10D** |

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………………………iv

MEMORANDUM OF POINTS AND AUTHORITIES BY PLAINTIFF
DOUGLAS HENDRICKS, M.D. IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT………………………………………………..1

I.      INTRODUCTION…………………………………………………1

II.     FACTUAL BACKGROUND…..…………………………………1

        A.      HENDRICKS Creates the Subject Photos and Becomes a
                Cynosure Luminary…………………………………………1

        B.      Defendant's Infringing Use of the Subject Photos ……………2

        C.      HENDRICKS' Discovery of the Infringement …………………5

III.    LEGAL STANDARD……………………………………………...6

IV.     LEGAL ARGUMENT…………………………………………….6

        A.      DEFENDANT'S MOTION FOR PARTIAL SUMMARY
                JUDGMENT AS TO PLAINTIFF'S COPYRIGHT
                INFRINGEMENT SHOULD BE DENIED BECAUSE
                TRIABLE ISSUES OF FACT EXIST AS TO CAUSATION
                AND DAMAGES…………………………………………...6

                1.      HENDRICKS Has Proffered Sufficient Circumstantial
                        Evidence that Constitutes a Reasonable Approximation
                        of the Profit Derived from the Infringement…………….7

                2.      Plaintiff's Damages Expert Has Provided Evidence of
                        Damages Attributable to the Defendant's Infringing
                        Conduct………………………………………………14

                3.      Any Claim for Apportionment of the Defendant's Profits
                        Between Infringing and Non-Infringing Causes Is a
                        Jury Issue……………………………………………15

        B.      PLAINTIFF'S CLAIM FOR RELIEF UNDER 15 U.S.C.
                SECTION 1125(a) SETS FORTH TRIABLE ISSUES OF
                FACT REGARDING DAMAGES………………………16

        C.      TRIABLE ISSUES OF FACT EXIST AS TO PLAINTIFF'S
                COMMON LAW UNFAIR COMPETITION CLAIM SINCE
                DEFENDANT PASSED OFF ITS SERVICES AS BEING
                AFFILIATED WITH HENDRICKS……………………………19

        D.      DEFENDANT'S CONDUCT IN FALSELY ASSOCIATING
                ITSELF WITH PLAINTIFF IS LIKELY TO DECEIVE THE
                PUBLIC SUCH THAT PLAINTIFF'S STATUTORY UNFAIR

ii

1

COMPETITION CLAIM IS APPROPRIATE…………………19

2

      E.     THE COURT SHOULD DISREGARD THE DECLARATION OF
BRUCE SILVERMAN BECAUSE HIS DESIGNATION WAS
IMPROPERLY CHARACTERIZED AS REBUTTAL OR IS
OTHERWISE UNTIMELY………………………………..20

V.     CONCLUSION…………………………………………………………..20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

## **TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

4

*Andreas v. Volkswagen of Am., Inc.*
     336 F.3d 789 (8th Cir. 2003)…………………………………………7, 9, 10, 12

5

6

*Badger Meter, Inc. v. Grinnell Corp.*
     13 F.3d 1145 (7th Cir. 1994)……………………………………………………17

7

8

*Bank of the West v. Superior Court*
     2 Cal.4th 1254 (2003)……………………………………………………………19

9

10

*Cel-Tech Comm'ns, Inc. v. Los Angeles Telephone Co.*
     20 Cal.4th 163 (1999)……………………………………………………………19

11

12

*Cream Records, Inc. v. Joseph Schlitz Brewing Co.*
     754 F.2d 826 (9th Cir. 1985)……………………………………………………16

13

14

*Daugherty v. American Honda Motor Co., Inc.*
     144 Cal.App.4th 824 (Ct. App. 2006)………………….…………………………20

15

16

*Del Amo v. Baccash*
     2008 WL 2780978 (C.D. Cal. 2008)……………………………………………11

17

18

*Fahmy v. Jay-Z*
     835 F. Supp. 2d 783 (C.D. Cal. 2011)…………………………………………7

19

20

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
     886 F.2d 1545 (9th Cir. 1989)……………………………………………………16

21

22

*Garcia v. Coleman*
     2009 WL 799393 (N.D. Cal. 2009)………………………………………10, 12

23

24

*Harper House, Inc. v. Thomas Nelson, Inc.*
     889 F.2d 197 (9th Cir. 1989)……………………………………………………17

25

26

*Harper & Row Publishers, Inc. v. Nations Enters.*
     471 U.S. 539 (1985)……………………………………………………16, 17

27

28

*Hartley v. Dillard's, Inc.*
     310 F.3d 1054 (8th Cir. 2002)……………………………………………………15

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009)………………………………………………………20

*Korea Supply Co. v. Lockhead Martin Corp.*
    29 Cal.4th 1134 (2003)……………………………………………………..19

*Kwikset Corp. v. Superior Court*
    51 Cal.4th 310 (2011)………………………………………………………19

*Lee Valley Tools, Ltd. v. Indus. Blade Co.*
    288 F.R.D. 254 (W.D.N.Y. 2013)…………………………………………15

*Lindy Pen Co. v. Bic Pen Corp.*
    982 F.2d 1400 (9th Cir. 1993)………………………………………….17, 18

*Mackie v. Rieser*
    296 F.3d 909 (9th Cir. 2002)………………………………………………11

*Polar Bear Productions, Inc. v. Timex Corp.*
    384 F.3d 700 (9th Cir. 2004)………………………………………..7, 8, 9, 12

*Rainey v. Wayne State Univ.*
    26 F. Supp. 2d 963 (E.D. Mich. 1998)…………………………………..11

*R.F.M.A.S., Inc. v. So*
    748 F. Supp. 2d 244 (S.D.N.Y. 1988)…………………………………….15

*Sheldon v. Metro-Goldwyn Pictures Corp.*
    309 U.S. 390 (1940)………………………………………………………16

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997)…………………………………………...17

*Walker v. Countrywide Homes Loans, Inc.*
    98 Cal.App.4th 1158 (Ct. App. 2002)…………………………………..19

*Wood v. Houghton Mifflin Harcourt Pub. Co.*
    589 F. Supp. 2d 1235 (D. Colo. 2008)…………………………………..10

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

<u>Other Authorities</u>

*McCarthy on Trademarks and Unfair Competition*, § 30:27 (1984)………………..18

<u>Statutes</u>

15 U.S.C. § 1117(a)……………………………………………………………..17, 18

15 U.S.C. § 1125(a)(1)(B)……………………………………………………16, 17

17 U.S.C. § 504(b)……………………………………………………………6, 8, 14

Cal. Bus. & Prof. Code § 17200………………………………………………..19

Cal. Bus. & Prof. Code § 17204………………………………………………..19

<u>Federal Rules</u>

Federal Rule of Civil Procedure 26(a)(2)(D)(ii)…...................................... 10

Federal Rule of Civil Procedure 37(c)......................................................... 10

Federal Rule of Civil Procedure 56…......................................................... 10

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## I.   INTRODUCTION

"Pictures speak a thousand words."- Dr. Shailaja Menon, sole shareholder and co-director of Defendant Physicians Skin & Weight Centers, Inc. ("PSWC") (See Declaration of Eric Schiffer ("Schiffer Dec."), Ex. A, 4:1-5:9). In a rather candid moment during her deposition, Dr. Menon showed that she understands that in the plastic surgery and cosmetic procedure business, appearance is everything. And the importance of conveying a beautiful image in conjunction with advertising is crucial to their business. It is the unauthorized use by PSWC of particularly striking "before and after" photographs ("Subject Photos") taken and owned by Plaintiff, Douglas Hendricks, M.D. ("HENDRICKS") (Schiffer Dec., Exs. D, E) which forms the basis of the current lawsuit.

Copyright protection is designed to prevent the exploitation of someone else's efforts. Yet that is precisely what happened in this case as Defendant systematically infringed HENDRICKS' images by making the Subject Photos the center piece of its billboard marketing campaign for the Smart Lipo procedure it offered. Defendant appears to concede that infringement occurred, yet seeks summary judgment, or alternatively, partial summary judgment, solely on the issues of causation and damages. For the reasons set forth below, triable issues of material fact exist which support HENDRICKS' claim to defendant's profits derived from their exploitation of the Subject Photos, as well as other relief available, such that the motion should be denied.

## II.   FACTUAL BACKGROUND

### A. **HENDRICKS Creates the Subject Photos and Becomes a Cynosure Luminary**

Beginning in March 2007, HENDRICKS became one of the first plastic surgeons in the state of California to use the SmartLipo laser from Cynosure, which marketed the laser. In fact, HENDRICKS' use of the laser in his practice became so prolific, that he earned the designation of a SmartLipo Luminary and would teach seminars on using the

1

laser to other practitioners.  (See Declaration of Martin Keleti filed in support of motion for summary judgment ("Keleti Dec."), Ex. D, pp 12-13).  Cynosure was so impressed by the results HENDRICKS was achieving using the laser that it requested that HENDRICKS share his before and after photographs so that Cynosure could tout those amazing results to other doctors in order to market their lasers.  This relationship also benefitted HENDRICKS since Cynosure would attribute credit for the amazing results to HENDRICKS, such that he could market his plastic surgery practice.  (Keleti, Dec., Ex. D, pp. 12-13).  The Subject Photos were therefore shared with Cynosure for that very limited purpose, and HENDRICKS never relinquished ownership of the Subject Photos to Cynosure or anyone else.  (Schiffer Dec., Ex. C, 92:3-94:22).  In fact, the Subject Photos included the notation "Images Courtesy of Dr. Hendricks, M.D., California" (Schiffer Dec., Ex. C, 92:3-94:22).  The Subject Photos were never intended to be used by any competitor medical practitioners, and HENDRICKS never gave any consent (express, implied, or otherwise) or license for any use beyond Cynosure. (Schiffer Dec., Ex. C, 92:3-94:22; Keleti, Dec., Ex. D, pp. 12-13 ).

      HENDRICKS took great care and skill in creating the Subject Photos.  According to HENDRICKS, techniques for patient photography were studied in medical school, such that the lighting and the positioning had to be just right in order to capture the dramatic results HENDRICKS' skill could provide to his patients.   (Schiffer Dec., Ex. C, 86:10-90:14).  HENDRICKS used the Subject Photos on his website and in his marketing materials. (Keleti Dec., Ex. D, pp. 12-13).

## B. <u>Defendant's Infringing Use of the Subject Photos</u>

      Dr. Menon formed PSWC in 2006.  Her husband, Mr. Murali Menon, became involved in marketing the business in 2008, and by 2010, he was working for PSWC full-time as director.  Both Dr. Menon and Mr. Menon are the only corporate directors of the company, and Dr. Menon is PSWC's sole shareholder.   (Schiffer Dec., Ex. B, 16).   The original location of PSWC was in Roseville, CA.  Later, PSWC opened the following additional locations: Folsom, CA (2008); Campbell, CA (2010); Fresno, CA

2

1    (January 2012); and Irvine, CA (June 2012).   (Schiffer Dec., Ex. B, 30:3-33:20).

2        By late 2009, PSWC had also begun using the Smart Lipo laser liposuction

3    procedure.  (Schiffer Dec., Ex. B, 40:4-12).   In conjunction with that use, PSWC

4    embarked upon a branding campaign using billboards all over northern California, and

5    eventually expanding into southern California, in order to advertise that their business

6    performed the Smart Lipo procedure and could provide amazing results, as reflected by

7    the Subject Photos which accompanied those billboards (which constituted 40-50% of

8    the freeway billboard space and greater than 50% of the poster billboard space).

9    (Schiffer Dec., Ex. A, 4:1-5:9; 7:2-10; Ex. B, 29:7-11; 40:4-12; 41:4-16; 50:4-10; 51;

10   63; Exs. I, J, K, O).

11       Unbeknownst to HENDRICKS, defendant PSWC decided to make the Subject

12   Photos the center piece of its Smart Lipo billboard marketing campaign without his

13   knowledge or consent.  (Schiffer Dec., Ex. B, 43:16-21; F).  According to Mr. Menon,

14   who made all the marketing decisions for PSWC, he was given several images from

15   Cynosure so that he could see examples of excellent results (consistent with the use to

16   which HENDRICKS testified during his deposition).  (Schiffer Dec., Ex. B, 41-42; Ex.

17   C, 92:3-94:22; Keleti, Dec., Ex. D, pp. 12-13).  Mr. Menon also admitted that the

18   Subject Photos (as well as all the images he was given) contained credit given to the

19   treating physician.  (Schiffer Dec., Ex. B, 42; 47:9-13).  Mr. Menon therefore knew that

20   the Subject Photos were taken by another doctor, and that they did not belong to PSWC.

21   He and Dr. Menon also knew that the Subject Photos were not of a patient of PSWC.

22   (Schiffer Dec., Ex. A, 6, 19-25; Ex. B, 47:9-13).

23       Nonetheless, Mr. Menon saw fit to use the Subject Photos on billboards, while

24   removing HENDRICKS' name from the image in order to do so.  (Schiffer Dec., Ex.

25   F).  In fact, emails between defendant and Clear Channel Outdoor show that the Subject

26   Photos were used on PSWC's billboards nearly exclusively between 2009 and 2012.

27   (Schiffer Dec., Exs. F, I, J, K, L, O, Q, R, W, X, Y, Z, DD). The billboards contained

28   location specific phone numbers for customers to call once they saw the billboard and

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

wanted to inquire about purchasing the services being offered in order to receive the results being advertised by the Subject Photos. (Schiffer Dec., Exs. K, M ,O, P, R). The defendant had the ability to track call volume from specific billboards in order to analyze location specific revenue, but chose not to do so. (Schiffer Dec., Ex. B, 17:5-23:3; 54:3-22). Defendant never analyzed its revenue by location or by advertising source; but rather, the director used his "gut feeling" to make marketing decisions involving advertising including billboard advertising. (Schiffer Dec., Ex. B, 14:15-23; 25:3-26:22; 39:21-40:6; 52). The defendant represented to Clear Channel at various times during its use of billboards involving the Subject Photos that it was in fact tracking the telephone business it received from the use of billboards. (Schiffer Dec., Exs. N, S, V, X, AA). Defendant claims that the emails containing these representations to Clear Channel about tracking the business it received from the use of billboards were lies, and were made only to try and negotiate more favorable rates and billboard locations. (Schiffer Dec., Ex. B, 56; 60:13-62:7; 72:20-25). The billboards also contained a website address for the defendant, which when visited, showed the Subject Photos on the home page along with the statement "These pictures are not models but our own patients" (Schiffer Dec., Ex. B, 77; Ex. H). Dr. Menon admitted that this constituted misleading advertising by the defendant. (Schiffer Dec., Ex. A, 8:7-17).

Defendant's general ledgers revealed that 44.7% of its advertising expenditure over the infringing time period was spent on billboard advertising with Clear Channel and CBS Outdoor. (Kahrs Dec., par. 13, Ex. A). The Subject Photos were the images predominantly used during that time period. (Schiffer Dec., Exs. F, I, J, K, L, O, Q, R, W, X, Y, Z, DD). While defendant tries to minimize the importance of the Subject Photos in the defendant's billboard campaign, Mr. Menon's own emails between Clear Channel Outdoor and himself belie that position. In fact, the usage of the Subject Photos was so important to PSWC that for a brief stretch of time (between November 2011 and January 2012), PSWC did in fact decide to use alternate images, but nearly

4

immediately thereafter specifically instructed  that the billboards go back to the Subject Photos.  (Schiffer Dec., Exs. T, U, W, X, Y).

## C. HENDRICKS' Discovery of the Infringement

In the summer/fall of 2012, PSWC opened an Irvine office (its fifth office).  In conjunction with that opening, PSWC purchased billboard space in Orange County, which is when HENDRICKS first learned of the infringing use of the Subject Photos.  (Keleti Dec., Ex. D, 23-24).  The Orange County billboard did in fact contain HENDRICKS' name on the image; thereby creating a false association between HENDRICKS and PSWC.  (Schiffer Dec., Ex. CC).  Mr. Menon's explanation as to why he included HENDRICKS' name on the Orange County billboard when his name was specifically excluded from all the northern California billboards was that he coincidentally read an article about copyrights around that same time and his "gut feeling" was that including HENDRICKS' name would be a good idea.  (Schiffer Dec., Ex. B, 46-47).

After seeing the defendant's infringing billboard on the freeway which used the Subject Photos, HENDRICKS did additional investigation and found that PSWC was also using the Subject Photos on the homepage of defendant's website and claiming that the patient was PSWC' own patient .  (Schiffer Dec., Ex. H).  Not only was this statement false, but it was in violation of  the American Board of Plastic Surgery Code of Ethics, section II(B), which prohibits "false, fraudulent or deceptive communications."  Mr. Menon testified that defendant has never made any efforts to comply with those rules even though they employ plastic surgeons who are bound by that Code of Ethics.   (Schiffer Dec., Ex. B, 37:5-38:25; Ex. G).  The Subject Photos contributed to the success of the billboard advertising campaign. (Schiffer Dec., Ex. A, 3-5, 7).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## III.   LEGAL STANDARD

Summary judgment is a drastic remedy and should be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment cannot be granted where a genuine dispute exists as to "material facts."  Rule 56(c)(2).  A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson, supra,* 477 U.S. at 248. Nevertheless, "[t]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . . Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions."  *Id.*, 477 U.S. at 249-255.  The court must believe the evidence of the opposing party, and must draw all reasonable inferences in the opposing party's favor.  *Id.*, 477 U.S. at 255.  At the summary judgment stage, the opposing party's version of any disputed issue of fact is presumed correct.  *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992).

The moving party has both an initial burden of production and the ultimate burden of persuading the court that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(c)(2).  If the moving party fails to carry its initial burden of production, the opposing party has no obligation to produce anything at all.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000).  For the reasons set forth specifically below,  genuine issues of material fact exist with respect to causation and damages such that PSWC's motion should be denied.

## IV.   LEGAL ARGUMENT

### A. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S COPYRIGHT INFRINGEMENT SHOULD BE DENIED BECAUSE TRIABLE ISSUES OF FACT EXIST AS TO CAUSATION AND DAMAGES

Section 504(b) of the Copyright Act (17 U.S.C. section 504(b)) provides for recovery of any profits of the infringer that are attributable to the infringement.

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Whether or not profits sought should be deemed direct profits or indirect profits constitutes an issue of fact for the jury to decide. *Fahmy v. Jay –Z*, 835 F. Supp. 2d 783, 792 (C.D. Cal. 2011).  Regardless of whether profits are classified as direct or indirect, a party must first establish a causal nexus between the infringement and the gross revenue before the burden shifts to the infringer to apportion the profits. To show a causal nexus between the infringement and the defendant's profits, a claimant must proffer some evidence that the infringement "at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700,711 (9th Cir. 2004).  Once that nexus is established in either direct or indirect profits case, if an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits may be proper.  The burden of proving apportionment (i.e. the contribution to profits of elements other than the infringement) is the defendant's.  *Andreas v. Volkswagen of Am., Inc.*, 336 (F. 3d 789, 796 (8th Cir. 2003).  Here, defendant appears to concede infringement, such that the only issues raised are whether or not plaintiff can show that triable issues of fact exist as to causation and damages (See moving papers at page 7, line 17, admitting that "this case all comes down to damages").  HENDRICKS easily meets that burden.

    1. <u>**HENDRICKS Has Proffered Sufficient Circumstantial Evidence that Constitutes a Reasonable Approximation of the Profit Derived from the Infringement**</u>

Since much of defendant's brief hinges upon what it deems to be a lack of a causal nexus, it would seem that a logical starting point for this analysis would be to address what the Ninth Circuit <u>has</u> deemed sufficient for purposes of this showing. To that end, *Polar Bear Productions*, supra, is highly instructive.   In *Polar Bear* the plaintiff had arranged to produce film footage showing some of the stars of whitewater kayaking paddling through exotic locales while using equipment bearing the Timex logo.  Timex continued using the footage without any permission to do so.  *Id*. at 702. The Ninth Circuit reviewed a jury's award of indirect profits in favor of the plaintiff and found that two out of the three types of evidence presented to support an award of

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

such profits constituted sufficient indicia of circumstantial evidence to demonstrate a reasonable approximation of the profit related to infringement. *Id*. at 712-713.[1] Specifically, the court in *Polar Bear* found that sales records from trade shows where the infringing defendant "showed" the unauthorized materials satisfied the plaintiff's burden. It also found that the plaintiff demonstrated a sufficient causal nexus through evidence that the defendant profited from a Mountain Dew booklet which contained an advertisement featuring the infringing material, which customers who ordered the watches through that promotion would have seen. *Id*. Thus, the Ninth Circuit found that circumstantial evidence that customers had <u>seen</u> the infringing image in conjunction with advertising and sales efforts constituted a sufficient basis upon which to satisfy the causal nexus requirement of 17 U.S.C. Section 504(b).

The remainder of the evidence the Ninth Circuit reviewed in *Polar Bear*, which related to profits arising from "brand prestige" was, however, rejected; the court finding such evidence insufficient to demonstrate a causal nexus. That is to say that the court found too attenuated plaintiff's attempt to link infringement at trade shows to excitement about the product based upon an association between the watches and outdoor sports, which would then translate to consumers purchasing watches, and that such enthusiasm allowed price increases which drove more revenue. *Id*. at 713-714. Of particular note to the court was the fact that actual retail purchasers were never exposed to the infringing images from the trade shows, nor was there a link between retail consumers and trade show promotion, such that the court rejected the brand prestige theory of recovery of defendant's profits. *Id*. at 715. The court therefore set aside the jury award of indirect profits not because of a lack of a causal nexus, but because the <u>amount</u> awarded by the jury was not supported by the substantial evidence presented. *Id*. Since the invalid portion of the indirect profit award (the premium branding) far eclipsed the legitimate portion (the evidence of trade show sales where the infringing

---

[1] The Ninth Circuit ended up vacating the jury award because the <u>amount</u> of the award could not be justified in light of the evidence presented. *Id*. at 713.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

advertisement was shown, as well as customer showings of the infringing Mountain Dew advertising), the award could not stand.  *Id*  at. 716.

In evaluating the evidence bearing upon causal nexus, the Ninth Circuit specifically noted that <u>circumstantial evidence was sufficient</u>, and that there was no requirement that customers be put on the stand to testify that they purchased watches because of the infringed image.  *Id*. at 712.  See also *Andreas* at 797 (copyright plaintiffs need not have a customer testify that infringement caused purchase decisions).[2]  In *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795-99 (8th Cir. 2003), the court reviewed the district court's vacating of an award of profits arising from copyright infringement involving a phrase which was similar to that used in a television commercial for the Audi TT coupe.  The district court found that the award was speculative because plaintiff had not shown a causal connection between the infringement and the defendant's profits.  The Eight Circuit reversed, however, finding that the evidence was sufficient to demonstrate a causal nexus between the profits derived and the infringement.  The court found that the infringing text "was the centerpiece of a commercial that essentially showed nothing but the TT coupe."  *Id*. at 797.  The court found , among other things, that the evidence by the plaintiff established that Audi presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market.  Based upon this, the court found that the jury had "enough circumstantial evidence to find that the commercial contributed to the profitable introduction of the TT coupe, which shifted the burden to Audi of showing

---

[2] Defendant wrongly claims that plaintiff has not offered "scientific proof of causation" (see moving papers at page 11, line 1) which is a standard the Ninth Circuit has never required.  As set forth more fully below, plaintiff has set forth substantial evidence that customers were intended to view the Subject Photos in conjunction with defendant's billboard and website advertising, that customers could call in on location specific phone numbers which were set forth on those billboards and that defendant claimed to have tracked those calls, that defendant intended to build a brand through billboard advertising which included the Subject Photos, and that the Subject Photos contributed to the success of the billboard campaign. (Schiffer Dec., Ex. A, 3-5; 7:2-10; Ex. B, 17:5-23:3; 29:7-11; 40:4-12; 41:4-16; 50:4-10; 51; 54:3-22; 56; 60:13-62:7; 63; 72:20-25; Exs. F, I, J, K, L, M, O, P, Q, R, T, U, W, X, Y, Z, DD).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

what effect other factors had on its profits.  *Id.*  Since the <u>fact</u> that infringement contributed to defendant's profits had been sufficiently established; the court found it appropriate that a jury determine the <u>extent</u> to which the infringement contributed to defendant's profits.  *Id.* at 799.

Likewise, in *Garcia v. Coleman*, 2009 WL 799393 (N.D. Cal. 2009), the court found that  a copyrighted photograph featured prominently on a wine label showed a causal nexus between profits and infringement, as it was the embodiment of the brand name.  In *Garcia*, the defendant had admitted that the label had significance independent of any wine to which it was affixed, and further, that the label design can have an effect on a wine's image and marketability.  The court therefore found the label contributed to the sales and profits earned by the defendants.  *Id.*  See also *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1235, 1244-48 (D. Colo. 2008) (denying  a summary judgment motion by the infringing defendant based upon a finding that the copyrighted photographs had contributed to the overall contribution that photographs and artwork make to the saleability of such material).

What is common with each of these cases is the fact that the infringing component constituted a substantial portion of the advertising.  The whitewater footage in *Polar Bear* was the focus of the Timex commercial; the infringing text in the Audi commercial was the "center piece" of the commercial in *Andreas*;  the wine label was the embodiment of the brand name in *Garcia*.  Similarly, the Subject Photos constituted the center piece of the defendant's Smart Lipo billboard marketing campaign.  Indeed, both Dr. Menon and Mr. Menon admitted that the image was an important component of their brand, and that while they could have run the billboard without any image, they thought it was better to do so with the Subject Photos.  The Subject Photos not only embodied the very procedure being touted on the billboards, but they suggested that those amazing results could be achieved by calling the number on the billboard or visiting the website address listed.  In fact, customers who visited that website address were greeted by those very same photos and told that the patient was not a model, but

10

was an actual patient of defendant.  (Schiffer Dec., Ex. B, 77; Ex. H).  Dr. Menon admitted that this was misleading.  (Schiffer Dec., Ex. A, 8:7-17)  It was also in violation of the American Board of Plastic Surgery Code of Ethics, section II(B).  Mr. Menon testified that defendant has never made any efforts to comply with those rules even though they employ plastic surgeons who are bound by that Code of Ethics. (Schiffer Dec., Ex. B, 37:5-38:25; Ex. G).

In contrast to those cases where (such as in the case at bar) the infringing feature was the center piece of the advertising, other cases have found no causal nexus between defendant's profits and infringement when the infringement was a small part of the advertising, such that the relationship between the infringement and the defendant's profits was deemed too speculative.  For example, in *Mackie v. Rieser*, 296 F. 3d 909, 914-916 (9th Cir. 2002), the Ninth Circuit found the causal nexus to be too speculative where the infringement was limited to one image on one page of a multipage brochure for a symphony which advertised a series of concerts.  See also *Del Amo v. Baccash*, 2008 WL 2780978 (C.D. Cal. 2008)(holding that the plaintiff failed to show a connection between the infringed isolated pornographic images displayed on the defendant's website which contained many other displayed pornographic photographs, and defendant's membership fees profits from the website); *Rainey v. Wayne State Univ*., 26 F. Supp. 2d 963, 971 (E.D. Mich. 1998)(finding no causal connection between an artist's work in a brochure distributed at car show where no cars were sold when the claim was for defendant's increased goodwill).  While defendant claims that the "only" evidence of a causal nexus comes from the expert damages report of Henry Kahrs.  (See Motion at page 6, lines 9-10), that position is belied by the substantial evidence, which when viewed in the light most favorably to the non-moving party, shows triable issues of fact as to the causal nexus.

Specifically, emails between defendant's director, Murali Menon, and Clear Channel Outdoor reveal that PSWC's plan was to embark upon a branding campaign using billboards in order to advertise that their business performed the Smart Lipo

11

procedure and could provide amazing results, as reflected by the Subject Photos which were the center piece of those billboards.  (Schiffer Dec., Ex. A, 4:1-5:9; 7:2-10; Ex. B, 29:7-11; 40:4-12; 41:4-16; 50:4-10; 51; 63; Exs. I, J, K, O).  Mr. Menon admitted that he considered the branding to involve the image that was appearing on the billboard. (Schiffer Dec., Ex. B, 50:8-10).  The Subject Photos were selected from a variety of photos to which the defendant was given access.  (Schiffer Dec., Ex. B, 41-42). Defendant knew that the Subject Photos did not depict its own results, but rather, the results of another doctor whose name appeared on the Subject Photos.  (Schiffer Dec., Ex. A, 6, 19-25; Ex. B, 47:9-13).  Defendant removed the name of the doctor from the Subject Photos in order to use the Subject Photos on its billboard advertising campaign. (Schiffer Dec., Ex. F).  Dr. Menon admitted that the Subject Photos  demonstrated a particularly excellent result which bolstered the service it was selling (i.e. the Smart Lipo procedure) (Schiffer Dec., Ex. A, 3-5, 7).  Defendant also admitted that it did not need to use any image on its billboard, but chose to do so.  (Schiffer Dec., Ex. B, 40:1-41:16).

A review of the billboard itself reveals that the Subject Photos constituted 40-50% of the freeway billboard space (and greater than 50% of the poster billboard space), and gave context to the Smart Lipo procedure being touted.  (Schiffer Dec., Ex. A, 4:1-5:9; 7:2-10; Ex. B, 29:7-11; 40:4-12; 41:4-16; 50:4-10; 51; 63; Exs. I, J, K, O). As with the *Polar Bear, Andreas*, and *Garcia* cases, the Subject Photos were without question the centerpiece of the billboard advertising.  The billboards were intended to be viewed by customers and contained location specific phone numbers for customers to call once they saw the billboard and wanted to inquire about purchasing the services being offered in order to receive the results being advertised by the Subject Photos. (Schiffer Dec., Exs. K, M ,O, P, R).  The defendant had the ability to track call volume from specific billboards in order to analyze location specific revenue, but chose not to do so.  (Schiffer Dec., Ex. B, 17:5-23:3; 54:3-22).  Defendant never analyzed its revenue by location or by advertising source; but rather, the director used his "gut

12

feeling" to make marketing decisions involving billboards based upon the defendant's overall revenue.  (Schiffer Dec., Ex. B, 14:15-23; 25:3-26:22; 39:21-40:6; 52).  Mr. Murali Menon represented to Clear Channel at various times during its use of billboards involving the Subject Photos that it was in fact tracking the telephone business generated from the billboards.  (Schiffer Dec., Exs. N, S, V, X, AA).  Mr. Murali claims that his representations to Clear Channel about tracking telephone leads from billboards were lies, and were made only to try and negotiate more favorable rates and billboard locations.  (Schiffer Dec., Ex. B, 56; 60:13-62:7; 72:20-25).

The billboards contained a website address for the defendant, which, when visited, showed the Subject Photos on the home page along with the statement that "These pictures are not models but our own patients" (Schiffer Dec., Ex. B, 77; Ex. H). Dr. Menon admitted that this usage of the Subject Photos on the defendant's website constituted misleading advertising by the defendant.  (Schiffer Dec., Ex. A, 8:7-17).

Defendant's general ledgers revealed that 44.7% of its advertising expenditures over the infringing time period were spent on billboard advertising with Clear Channel and CBS Outdoor.  (Kahrs Dec., par. 13, Ex. A).  The Subject Photos were the images predominantly used during that time period.  (Schiffer Dec., Exs. F, I, J, K, L, O, Q, R, W, X, Y, Z, DD).  Defendant stopped using the Subject Photos for a brief time period, but immediately instructed Clear Channel to go back to the usage of the Subject Photos. (Schiffer Dec., Exs. T, U, W, X, Y).  Defendant would not have used the billboard campaign had it no been successful, and Dr. Menon admitted that the Subject Photos contributed to the success of the billboard advertising campaign.  (Schiffer Dec., Ex. A, 3-5, 7).

All of this evidence presents compelling circumstantial evidence that the defendant's profits bear a legally significant relationship to the systematic infringement of the Subject Photos which constituted the center piece of defendant's Smart Lipo billboard marketing campaign.  At the very least, triable issues of fact exist as to the

13

1
2

causal nexus between the infringement and defendant's profits, such that defendant's

motion should be denied, and this case should be tried to a jury.

3
4

**2. Plaintiff's Damages Expert Has Provided Evidence of Damages Attributable to the Defendant's Infringing Conduct**

5
6
7
8
9
10
11
12
13
14
15

Pursuant to 17 U.S.C. section 504(b), HENDRICKS is entitled to recover the

defendant's profits derived as a result of the infringement.   To assist in this calculation,

Plaintiff has retained an expert to opine on those damages.  Henry Kahrs of RGL

Forensics produced a report dated November 25, 2013, wherein he reviewed the

defendant's general ledgers from 2009 to early 2013, as well as communications

between the defendant and its billboard advertisers, and came up with an opinion of

profits which he allocates to billboard usage which contained the Subject Photos.  (See

Kahrs Dec., Ex. A).  Kahrs's review of the defendant's own ledgers revealed that it

spent 44.7% of its $3,068,864.00 advertising expenditures on billboard advertising.   At

times, the advertising expenditure was up to 15% of defendant's revenue.  (Kahrs Dec.

at par. 13).

16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant criticizes the Kahrs report, however, finding that "the expert has not

documented that a single call. . . resulted in profits"  (see moving papers at page 11,

lines 17-18).  The defendant conveniently omits the fact that Mr. Menon admitted that

the defendant had the ability to track call volume from specific billboards in order to

analyze location specific and advertising source specific revenue, but claims that it

chose not to do so.  (Schiffer Dec., Ex. B, 17:5-23:3; 54:3-22).  Significantly, the

defendant's own emails between itself and Clear Channel Outdoor state otherwise, and

refer extensively to its analysis arising from its call tracking system.  Whether the

defendant is to be believed that it spent millions of dollars on billboard advertising

which featured the Subject Photos prominently, yet made no effort to track the results

of those advertising efforts, is a matter for the jury to weigh.  However, that the

defendant has chosen to take the position of being ignorant as to the results of its own

marketing efforts should not serve as a basis to contend that plaintiff cannot satisfy its

14

evidentiary burden.  Defendant's arguments to the contrary are nothing more than defendant's effort to hold plaintiff to a standard that it could not satisfy itself.

Defendant has retained a rebuttal damages expert (David Weiner) who criticizes portions of the Kahrs report, but who offers no opinion on what he believes the profits attributable to infringement should be.  Rather than having Mr. Weiner do any relevant analysis of that issue, the defendant criticizes the assumptions made by defendant's damages expert, when this expert relied upon the data made available by the defendant. (Kahrs Dec. at par. 5, 10, 14).[3]  Moreover, to suggest, as defendant's retained damages expert Mr. Weiner does, that there is no viable correlation presented between advertising and revenue, simply makes no business sense since if that was true, defendant could have spent nothing on advertising and made the same revenue.  (Kahrs Dec. at par. 13).  Taking a conservative position on the allocation of profit derived from billboard usage, as well as expenses incurred by the defendant during that time period (which, incidentally is the defendant's burden to prove, not the plaintiff's), Kahrs found that after deducting the allocated fixed costs and depreciation from the incremental profits earned, the net profit earned by the infringer from use of the billboards containing the Subject Photos was $1,411,466.00.[4]  Plaintiff has therefore presented sufficient evidence of damages attributable to the infringing conduct, such that summary judgment on that issue is not appropriate.

3. **Any Claim for Apportionment of the Defendant's Profits Between Infringing and Non-Infringing Causes Is a Jury Issue**

Defendant spends much time in its moving papers arguing what is in effect an apportionment argument.  (see Moving papers at pages 10-13).  While it may ultimately be the case that the defendant's profits are derived from both infringing and non-

---

[3] Any criticism of the Kahrs report should bear upon the weight of Kahrs's testimony, and not its admissibility. See *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002); *Lee Valley Tools, Ltd.v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013); *R.F.M.A.S., Inc. v. So,* 748 F.Supp.2d 244, 269 (S.D. N.Y. 1988).

[4] It should be noted that defendant's gross revenues during the infringing period were $16,311,442.77. (Kahrs Dec., Ex. A).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

infringing activities, that issue bears upon the defendant's burden of apportionment, rather than whether plaintiff has been able to make a showing of damages based upon the defendant's profits.  See *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir.1985).  See also *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir.1989) (holding that the benefit of the doubt in apportioning profits is given to the plaintiff ).   If in fact the defendant can show that other non-infringing components of the billboard drove revenue, then that is its burden.  However, that does not somehow diminish plaintiff having met his burden of showing a causal nexus and damages based upon the defendant's profits.  At the very minimum, a jury should decide how much of the infringement from the Subject Photos that occurred on the billboards drove the defendant's profits.  As the Supreme Court has noted, "an infringer who commingles infringing and non-infringing elements 'must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.'"  *Harper & Row Publishers, Inc. v. Nations Enters.*, 471 U.S. 539, 567 (1985)(quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940).  Moreover, precision is not required, as long as a reasonable and just apportionment of profits is reached.  *Frank Music* at 1549. Any issue as to apportionment should be left for a jury to decide, such that summary judgment on that basis is inappropriate.

### B. PLAINTIFF'S CLAIM FOR RELIEF UNDER 15 U.S.C. SECTION 1125(a) SETS FORTH TRIABLE ISSUES OF FACT REGARDING DAMAGES

Pursuant to 15 U.S.C. section 1125(a)(1)(B), "any person   who, on or in connection with any goods ... or any container for goods, uses in commerce any word, term, name ... or any ... false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her ... goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  Plaintiff has presented evidence to establish a violation of this provision by virtue

16

of the defendant's misleading use of the Subject Photos on its billboard and website. Indeed, any consumer considering a laser Lipo procedure would be inclined to believe that the image set forth on the billboard represented the defendant's actual result, when in fact, it was plaintiff's actual result.  Should that consumer then visit the website being advertised on the billboard, the consumer would see the Subject Photos again, with a deceptive notation that "these pictures are not model but our own patients." (Schiffer Dec., Ex. A, 8:7-17; Ex. B, 77; Ex. H).  Such conduct constitutes false advertising, and therefore a violation of 15 U.S. C. section 1125(a)(1)(B).

Defendant again appears to concede the violation, but instead claims that plaintiff cannot prove damage.  Defendant wrongly states, however, that only evidence of lost profits and actual consumer deception can satisfy a showing of damages.  (See Memorandum of Points and Authorities at page 15, lines 20-21).  Defendant misstates the law on this point.  Pursuant to 15 U.S.C. section 1117(a), a plaintiff who successfully establishes a violation of Section 43(a) is entitled to recover, "subject to the principles of equity. . .(1) defendant's profits, (2) any damages sustained by the plaintiff." S*outhland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-46 (9th Cir. 1997).  Plaintiff cites to *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) for the proposition that actual injury resulting from the deception is an essential element in a suit for damages under Section 43(a).  However, defendant ignores subsequent Ninth Circuit authority which specifically authorizes a district court the discretion to fashion relief, including monetary relief, based upon the totality of the circumstances.  *Lindy Pen  Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993). See *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (holding that even if a plaintiff is unable to demonstrate actual damages resulting from the defendant's Section 43(a) violation, Section 1117 allows the district court to award the plaintiff any just monetary award so long as it constitutes "compensation" for plaintiff's losses or the defendant's unjust enrichment and is not simply a "penalty" for the defendant's conduct).  See also *McCarthy on Trademarks and Unfair Competition*,

17

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  Section 30:27 (1984) ("because proof of actual damages is often difficult, a court may

2  award damages based on defendant's profits on the theory of unjust enrichment").

3      Here, plaintiff has presented evidence that not only would justify this court

4  fashioning an award for the plaintiff based upon the defendant's unjust enrichment, but

5  would also support a finding of willful infringement, allowing plaintiff to seek treble

6  damages under 15 U.S.C. section 1117(a).  Specifically, Mr. Menon admitted that the

7  Subject Photos contained the name of the doctor who achieved those results, but that he

8  opted to remove HENDRICKS' name from the images and to use the Subject Photos as

9  the center piece of  PSWC's marketing efforts.  (Schiffer Dec., Ex. A, 6, 19-25; Ex. B,

10  42; 47:9-13; Ex. F).  The inevitable result of this conduct was to not only to imply that

11  the results achieved in those images were results PSWC had achieved, but also to

12  attribute the source of the Subject Photos as being associated with PSWC.  Dr. Menon

13  testified that she knew the images were not of an actual PSWC patient, yet on the

14  website, the statement indicates that the Subject Photos are one of their own patients.

15  (Schiffer Dec., Ex. A, 8:7-17; Ex. B, 77; Ex. H).  Finally, when PSWC opened an office

16  in Orange County, it put HENDRICKS' name on the image that appeared on the

17  Orange County billboard.  (Schiffer Dec., Ex. CC).  Mr. Menon testified that he just

18  happened to read an article about attributing credit and that is why he did so.  (Schiffer

19  Dec., Ex. B, 46-47).  This testimony makes no sense, and the implication is clear:

20  PSWC knew that HENDRICKS was in Orange County and wanted to trade off his

21  name and goodwill.  This type of misleading advertising not only violates the American

22  Board of Plastic Surgery Code of Ethics, but it constitutes evidence of willfulness,

23  which would more than justify this court fashioning relief to compensate plaintiff by

24  virtue of the defendant's unjust enrichment.  *Lindy Pen*, supra, at 1411.  Since plaintiff

25  has shown the existence of triable issues of material fact as to his false advertising

26  claim under Section 43(a), summary judgment is not warranted.

27

28

18

1

2

### C. **TRIABLE ISSUES OF FACT EXIST AS TO PLAINTIFF'S COMMON LAW UNFAIR COMPETITION CLAIM SINCE DEFENDANT PASSED OFF ITS SERVICES AS BEING AFFILIATED  WITH HENDRICKS**

3

4

5

6

7

8

9

10

11

The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1263 (1992).   As set forth more fully above, there can be no doubt that defendant passed off its services as being affiliated with HENDRICKS so as to  exploit his reputation in the market.  (Schiffer Dec., Ex. A, 8:7-17; Ex. B, 46-47, 77; Exs. H, CC).  At the very minimum, triable issues of fact exist such that motion for summary judgment as to this claim should be denied.

12

13

14

### D. **DEFENDANT'S CONDUCT IN FALSELY ASSOCIATING ITSELF WITH PLAINTIFF IS LIKELY TO DECEIVE THE PUBLIC SUCH THAT PLAINTIFF'S STATUTORY UNFAIR COMPETITION CLAIM IS APPROPRIATE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bus. & Prof. Code Section 17200 prohibits unfair competition, defined by statute to include unlawful, unfair and fraudulent business acts.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003).  The major purpose of *Bus. & Prof. Code* Section 17200 is the "preservation of fair business competition."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999); *Walker v. Countrywide Home Loans, Inc*., 98 Cal.App.4th 1158, 1169 (2002).  A private plaintiff may bring an unfair competition claim under *Bus. & Prof. Code* section 17200 if he has "suffered injury in fact."  *See* Bus. & Prof. Code Section 17204 (added by proposition 64 in 2004).  *See also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011).  To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived by the business practice at issue."  *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009).  A violation for fraudulent practices is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of fraud.  *Daugherty v. American*

19

*Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 838 (2006).

As set forth above, plaintiff has presented evidence that tends to show that the defendant engaged in deceptive practices likely to deceive the public, using plaintiff's own images and trading off of his name and goodwill.  (Schiffer Dec., Ex. A, 6, 19-25; Ex. B, 42; 47:9-13; Ex. F).  Defendant systematically exploited HENDRICKS' efforts by infringing the Subject Photos and misleading the public that those results had been achieved by the defendant.  HENDRICKS should be entitled to seek all appropriate remedies available to him under this statutory scheme, such that the motion for summary judgment as to this claim should be denied.

### E. THE COURT SHOULD DISREGARD THE DECLARATION OF BRUCE SILVERMAN BECAUSE HIS DESIGNATION WAS IMPROPERLY CHARACTERIZED AS REBUTTAL OR IS OTHERWISE UNTIMELY

As set forth more extensively in plaintiff's motion in limine to exclude Bruce Silverman as an expert and to preclude his testimony (Doc. 28), defendant has improperly designated Silverman as a rebuttal expert when his purported opinion constitutes affirmative expert opinion which should have been disclosed concurrently during the initial disclosure.   In light of defendant's violation of Rule 26(a)(2)(D)(ii), as well as this court's Scheduling Order, plaintiff objects to Silverman's declaration and his report.  To the extent defendant uses Silverman's declaration in support of this motion (which is unclear based upon a review of defendant's moving papers), such usage should be stricken pursuant to Rule 37(c).

### V.   CONCLUSION

PSWC undertook a branding campaign utilizing the Subject Photos, which comprised 40-50% of the billboard space.  The importance of the Subject Photos was admitted by the defendant during deposition testimony, and options to move away from the Subject Photos were quickly scrapped; the defendant opting instead to return to the use of the Subject Photos.  Plaintiff has shown the existence of triable issues of material fact as to all of his clients.  As such, plaintiff respectfully requests that this court deny

1   the motion in its entirety.

2   DATED:  February 3, 2014                    SCHIFFER & BUUS, APC

3

4                                               By:  /s/Eric Schiffer

5                                                    ERIC M. SCHIFFER
                                                     WILLIAM L. BUUS
6                                               Attorneys for Plaintiff
                                                DOUGLAS HENDRICKS, M.D.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and employed in Orange County, California.  I am over the age of eighteen years and not a party to the above-entitled action.  My business address is 3070 Bristol Street, Suite 530, Costa Mesa, CA 92626.  I hereby certify that on February 3, 2014, pursuant to agreement of the parties, I electronically served the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**  by transmitting via email or electronic transmission the document listed above to the person at the email address set forth below**:**

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 3, 2014 at Costa Mesa, California.


 _/s/Eric M. Schiffer_

Eric M. Schiffer

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>SERVICE LIST</u>

Andres Quintana
John Houkom
QUINTANA LAW GROUP
26135 Mureau Road, Suite 101
Calabasas, California 91302
Telephone: (818) 914-2100
Facsimile: (818) 914-2101
E-mail: andres@qlglaw.com
john@qlglaw.com

Keith Wileman
S. Martin Keleti
VEATCH CARLSON, LLP
700 South Flower Street, 22nd Floor
Los Angeles, CA 90017-4209
Telephone:  (213) 381-2861
Facsimile:  (213) 383-6370
E-mail:  kwileman@veatchfirm.com
mkeleti@veatchfirm.com

Attorneys for Defendant PHYSICIANS SKIN & WEIGHT CENTERS, INC.

23

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT