Eric M. Schiffer (SBN 179695)
William L. Buus (SBN 180059)
SCHIFFER & BUUS, APC
3070 Bristol Street, Suite 530
Costa Mesa, California 92626
Telephone:  (949)825-6140
Facsimile:   (949)825-6141
Email:        eschiffer@schifferbuus.com
                  wbuus@schifferbuus.com

Attorneys for Plaintiff,
DOUGLAS HENDRICKS, M.D.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS HENDRICKS, M.D., an individual,<br><br>            Plaintiff,<br><br>     vs.<br><br>PHYSICIANS SKIN & WEIGHT CENTERS, INC., a California Corporation; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.: 8:12-cv-02169-AG-RNB<br><br>Complaint filed: December 14, 2012<br>Trial Date:           March 25, 2014<br><br>**TRIAL BRIEF BY PLAINTIFF DOUGLAS HENDRICKS, M.D.**<br><br>Date:     March 25, 2014<br>Time:    9:00 a.m.<br>Crtrm:   10D |

PLAINTIFF'S TRIAL BRIEF

## I. INTRODUCTION

This case is based upon the unauthorized use by defendant PHYSICIANS SKIN & WEIGHT CENTERS, INC. ("PSWC") of particularly striking "before and after" photographs ("Subject Photos") taken and owned by Plaintiff, DOUGLAS HENDRICKS, M.D. ("HENDRICKS"). The undisputed evidence will show that the defendant systematically infringed HENDRICKS' images by making the Subject Photos the center piece of its billboard marketing campaign for the Smart Lipo procedure it offered; the same procedure which HENDRICKS offered. Plaintiff will prove, through substantial circumstantial evidence, a causal nexus between the defendant's infringing activities and its profits. Plaintiff will also prove that the defendant engaged in false advertising by falsely attributing the results achieved for the patient shown in the Subject Photos as being the defendant's own patient (all of which rises to the level of willful conduct). Through plaintiff's damages expert, Henry Kahrs, he will prove the amount of damages he is entitled to recover which are based upon a reasonable calculation of the defendant's profits arising from the infringement.

## II. FACTUAL BACKGROUND

### A. HENDRICKS Creates the Subject Photos and Becomes a Cynosure Luminary

Beginning in March 2007, HENDRICKS became one of the first plastic surgeons in the state of California to use the SmartLipo laser from Cynosure, which marketed the laser. In fact, HENDRICKS' use of the laser in his practice became so prolific, that he earned the designation of a SmartLipo Luminary and would teach seminars on using the laser to other practitioners. Cynosure was so impressed by the results HENDRICKS was achieving using the laser that it requested that HENDRICKS share his before and after photographs so that Cynosure could tout those amazing results to other doctors in order to market their lasers. This relationship also benefitted HENDRICKS since Cynosure would attribute credit for the amazing results to HENDRICKS, such that he could market his plastic surgery practice. The Subject Photos were therefore shared with Cynosure for that very limited purpose, and HENDRICKS never relinquished

ownership of the Subject Photos to Cynosure or anyone else. In fact, the Subject Photos included the notation "Images Courtesy of Dr. Hendricks, M.D., California" The Subject Photos were never intended to be used by any competitor medical practitioners, and HENDRICKS never gave any consent (express, implied, or otherwise) or license for any use beyond Cynosure.

HENDRICKS took great care and skill in creating the Subject Photos. According to HENDRICKS, techniques for patient photography were studied in medical school, such that the lighting and the positioning had to be just right in order to capture the dramatic results HENDRICKS' skill could provide to his patients. HENDRICKS used the Subject Photos on his website and in his marketing materials.

## B. Defendant's Infringing Use of the Subject Photos

Dr. Menon formed PSWC in 2006. Her husband, Mr. Murali Menon, became involved in marketing the business in 2008, and by 2010, he was working for PSWC full-time as director. Both Dr. Menon and Mr. Menon are the only corporate directors of the company, and Dr. Menon is PSWC's sole shareholder. The original location of PSWC was in Roseville, CA. Later, PSWC opened the following additional locations: Folsom, CA (2008); Campbell, CA (2010); Fresno, CA (January 2012); and Irvine, CA (June 2012).

By late 2009, PSWC had also begun using the Smart Lipo laser liposuction procedure. In conjunction with that use, PSWC embarked upon a branding campaign using billboards all over northern California, and eventually expanding into southern California, in order to advertise that their business performed the Smart Lipo procedure and could provide amazing results, as reflected by the Subject Photos which accompanied those billboards (which constituted 40-50% of the freeway billboard space and greater than 50% of the poster billboard space).

Unbeknownst to HENDRICKS, defendant PSWC decided to make the Subject Photos the center piece of its Smart Lipo billboard marketing campaign without his knowledge or consent. According to Mr. Menon, who made all the marketing decisions for PSWC, he was given several images from Cynosure so that he could see examples

of excellent results.  Mr. Menon also admitted that the Subject Photos (as well as all the images he was given) contained credit given to the treating physician.  Mr. Menon therefore knew that the Subject Photos were taken by another doctor, and that they did not belong to PSWC.  He and Dr. Menon also knew that the Subject Photos were not of a patient of PSWC.

Nonetheless, Mr. Menon saw fit to use the Subject Photos on billboards, while removing HENDRICKS' name from the image in order to do so.  In fact, emails between defendant and Clear Channel Outdoor show that the Subject Photos were used on PSWC's billboards nearly exclusively between 2009 and 2012.  The billboards contained location specific phone numbers for customers to call once they saw the billboard and wanted to inquire about purchasing the services being offered in order to receive the results being advertised by the Subject Photos.  The defendant had the ability to track call volume from specific billboards in order to analyze location specific revenue, but chose not to do so.  Defendant never analyzed its revenue by location or by advertising source; but rather, the director used his "gut feeling" to make marketing decisions involving advertising including billboard advertising.  The defendant represented to Clear Channel at various times during its use of billboards involving the Subject Photos that it was in fact tracking the telephone business it received from the use of billboards.  Defendant claims that the emails containing these representations to Clear Channel about tracking the business it received from the use of billboards were lies, and were made only to try and negotiate more favorable rates and billboard locations.  The billboards also contained a website address for the defendant, which when visited, showed the Subject Photos on the home page along with the statement "These pictures are not models but our own patients."  Dr. Menon admitted that this constituted misleading advertising by the defendant.

Defendant's general ledgers revealed that 44.7% of its advertising expenditure over the infringing time period was spent on billboard advertising with Clear Channel and CBS Outdoor.  The Subject Photos were the images predominantly used during that time period.  In fact, the usage of the Subject Photos was so important to PSWC that for

a brief stretch of time (between November 2011 and January 2012), PSWC did in fact decide to use alternate images, but nearly immediately thereafter specifically instructed that the billboards go back to the Subject Photos.

### C. **HENDRICKS' Discovery of the Infringement**

In the summer/fall of 2012, PSWC opened an Irvine office (its fifth office). In conjunction with that opening, PSWC purchased billboard space in Orange County, which is when HENDRICKS first learned of the infringing use of the Subject Photos. The Orange County billboard did in fact contain HENDRICKS' name on the image; thereby creating a false association between HENDRICKS and PSWC. After seeing the defendant's infringing billboard on the freeway which used the Subject Photos, HENDRICKS did additional investigation and found that PSWC was also using the Subject Photos on the homepage of defendant's website and claiming that the patient was PSWC' own patient.

### III. LEGAL ARGUMENT
### A. **PLAINTIFF WILL PROVE COPYRIGHT INFRINGEMENT**

Section 504(b) of the Copyright Act (17 U.S.C. section 504(b)) provides for recovery of any profits of the infringer that are attributable to the infringement. A party must first establish a causal nexus between the infringement and the gross revenue before the burden shifts to the infringer to apportion the profits. To show a causal nexus between the infringement and the defendant's profits, a claimant must proffer some evidence that the infringement "at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700,711 (9th Cir. 2004). Once that nexus is established in either direct or indirect profits case, if an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits may be proper. The burden of proving apportionment (i.e. the contribution to profits of elements other than the infringement) is the defendant's. *Andreas v. Volkswagen of Am., Inc.*, 336 (F. 3d 789, 796 (8th Cir. 2003).

4

PLAINTIFF'S TRIAL BRIEF

### 1. **HENDRICKS Will Proffer Circumstantial Evidence that Constitutes a Reasonable Approximation of the Profit Derived from the Infringement**

The Ninth Circuit found that circumstantial evidence that customers had <u>seen</u> the infringing image in conjunction with advertising and sales efforts constituted a sufficient basis upon which to satisfy the causal nexus requirement of 17 U.S.C. Section 504(b).*Polar Bear* at 713-714. The Ninth Circuit specifically noted that there was no requirement that customers be put on the stand to testify that they purchased watches because of the infringed image. *Id*. at 712. See also *Andreas* at 797 (copyright plaintiffs need not have a customer testify that infringement caused purchase decisions). Likewise, in *Garcia v. Coleman*, 2009 WL 799393 (N.D. Cal. 2009), the court found that a copyrighted photograph featured prominently on a wine label showed a causal nexus between profits and infringement, as it was the embodiment of the brand name. The court therefore found the label contributed to the sales and profits earned by the defendants. *Id*. What is common with each of these cases is the fact that the infringing component constituted a substantial portion of the advertising.

Similarly, the Subject Photos constituted the center piece of the defendant's Smart Lipo billboard marketing campaign. Indeed, both Dr. Menon and Mr. Menon admitted that the image was an important component of their brand, and that while they could have run the billboard without any image, they thought it was better to do so with the Subject Photos. The Subject Photos not only embodied the very procedure being touted on the billboards, but they suggested that those amazing results could be achieved by calling the number on the billboard or visiting the website address listed. In fact, customers who visited that website address were greeted by those very same photos and told that the patient was not a model, but was an actual patient of defendant. Dr. Menon admitted that this was misleading.

In contrast to those cases where (such as in the case at bar) the infringing feature was the center piece of the advertising, other cases have found no causal nexus between defendant's profits and infringement when the infringement was a small part of the

advertising, such that the relationship between the infringement and the defendant's profits was deemed too speculative. For example, in *Mackie v. Rieser*, 296 F. 3d 909, 914-916 (9th Cir. 2002), the Ninth Circuit found the causal nexus to be too speculative where the infringement was limited to one image on one page of a multipage brochure for a symphony which advertised a series of concerts. See also *Del Amo v. Baccash*, 2008 WL 2780978 (C.D. Cal. 2008)(holding that the plaintiff failed to show a connection between the infringed isolated pornographic images displayed on the defendant's website which contained many other displayed pornographic photographs, and defendant's membership fees profits from the website). Specifically, emails between defendant's director, Murali Menon, and Clear Channel Outdoor reveal that PSWC's plan was to embark upon a branding campaign using billboards in order to advertise that their business performed the Smart Lipo procedure and could provide amazing results, as reflected by the Subject Photos which were the center piece of those billboards. Mr. Menon admitted that he considered the branding to involve the image that was appearing on the billboard. The Subject Photos were selected from a variety of photos to which the defendant was given access. Defendant knew that the Subject Photos did not depict its own results, but rather, the results of another doctor whose name appeared on the Subject Photos. Defendant removed the name of the doctor from the Subject Photos in order to use the Subject Photos on its billboard advertising campaign. Dr. Menon admitted that the Subject Photos demonstrated a particularly excellent result which bolstered the service it was selling (i.e. the Smart Lipo procedure). Defendant also admitted that it did not need to use any image on its billboard, but chose to do so.

    A review of the billboard itself reveals that the Subject Photos constituted 40-50% of the freeway billboard space (and greater than 50% of the poster billboard space), and gave context to the Smart Lipo procedure being touted. As with the *Polar Bear, Andreas*, and *Garcia* cases, the Subject Photos were without question the centerpiece of the billboard advertising. The billboards were intended to be viewed by customers and contained location specific phone numbers for customers to call once

PLAINTIFF'S TRIAL BRIEF

they saw the billboard and wanted to inquire about purchasing the services being offered in order to receive the results being advertised by the Subject Photos. The defendant had the ability to track call volume from specific billboards in order to analyze location specific revenue, but chose not to do so. Defendant never analyzed its revenue by location or by advertising source; but rather, the director used his "gut feeling" to make marketing decisions involving billboards based upon the defendant's overall revenue. Mr. Murali Menon represented to Clear Channel at various times during its use of billboards involving the Subject Photos that it was in fact tracking the telephone business generated from the billboards. Mr. Murali claims that his representations to Clear Channel about tracking telephone leads from billboards were lies, and were made only to try and negotiate more favorable rates and billboard locations.

The billboards contained a website address for the defendant, which, when visited, showed the Subject Photos on the home page along with the statement that "These pictures are not models but our own patients." Dr. Menon admitted that this usage of the Subject Photos on the defendant's website constituted misleading advertising by the defendant. All of this evidence presents compelling circumstantial evidence that the defendant's profits bear a legally significant relationship to the systematic infringement of the Subject Photos which constituted the center piece of defendant's Smart Lipo billboard marketing campaign.

### 2. **Plaintiff's Damages Expert Has Provided Evidence of Damages Attributable to the Defendant's Infringing Conduct**

Pursuant to 17 U.S.C. section 504(b), HENDRICKS is entitled to recover the defendant's profits derived as a result of the infringement. To assist in this calculation, Plaintiff has retained an expert to opine on those damages. Henry Kahrs of RGL Forensics produced a report dated November 25, 2013, wherein he reviewed the defendant's general ledgers from 2009 to early 2013, as well as communications between the defendant and its billboard advertisers, and came up with an opinion of profits which he allocates to billboard usage which contained the Subject Photos.

Kahrs's review of the defendant's own ledgers revealed that it spent 44.7% of its $3,068,864.00 advertising expenditures on billboard advertising. At times, the advertising expenditure was up to 15% of defendant's revenue.

The defendant's own emails between itself and Clear Channel Outdoor refer extensively to its analysis arising from its call tracking system. Whether the defendant is to be believed that it spent millions of dollars on billboard advertising which featured the Subject Photos prominently, yet made no effort to track the results of those advertising efforts, is a matter for the jury to weigh. However, that the defendant has chosen to take the position of being ignorant as to the results of its own marketing efforts should not serve as a basis to contend that plaintiff cannot satisfy its evidentiary burden.

Moreover, to suggest, as defendant's retained damages expert Mr. Weiner does, that there is no viable correlation presented between advertising and revenue, simply makes no business sense since if that was true, defendant could have spent nothing on advertising and made the same revenue. Taking a conservative position on the allocation of profit derived from billboard usage, as well as expenses incurred by the defendant during that time period (which, incidentally is the defendant's burden to prove, not the plaintiff's), Kahrs found that after deducting the allocated fixed costs and depreciation from the incremental profits earned, the net profit earned by the infringer from use of the billboards containing the Subject Photos was $1,411,466.00.[1]  See *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir.1989) (holding that the benefit of the doubt in apportioning profits is given to the plaintiff and that precision is not required as long as a reasonable and just apportionment of profits is reached).

## B. PLAINTIFF WLL PROVE FALSE ADVERTISING

Pursuant to 15 U.S.C. section 1125(a)(1)(B), "any person who, on or in connection with any goods ... or any container for goods, uses in commerce any word, term, name ... or any ... false or misleading description of fact, or false or misleading

---

[1] It should be noted that defendant's gross revenues during the infringing period were $16,311,442.77.

8

PLAINTIFF'S TRIAL BRIEF

representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her ... goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." Plaintiff has presented evidence to establish a violation of this provision by virtue of the defendant's misleading use of the Subject Photos on its billboard and website. Indeed, any consumer considering a laser Lipo procedure would be inclined to believe that the image set forth on the billboard represented the defendant's actual result, when in fact, it was plaintiff's actual result. Should that consumer then visit the website being advertised on the billboard, the consumer would see the Subject Photos again, with a deceptive notation that "these pictures are not model but our own patients." Such conduct constitutes false advertising, and therefore a violation of 15 U.S. C. section 1125(a)(1)(B).

Pursuant to 15 U.S.C. section 1117(a), a plaintiff who successfully establishes a violation of Section 43(a) is entitled to recover, "subject to the principles of equity. . .(1) defendant's profits" S*outhland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-46 (9th Cir. 1997). The Ninth Circuit has further held that an award of such profits can be based upon the totality of the circumstances. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993). See also *McCarthy on Trademarks and Unfair Competition*, Section 30:27 (1984) ("because proof of actual damages is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment").

Here, plaintiff has presented evidence that not only would justify this court fashioning an award for the plaintiff based upon the defendant's unjust enrichment, but would also support a finding of willful infringement, allowing plaintiff to seek treble damages under 15 U.S.C. section 1117(a). Specifically, Mr. Menon admitted that the Subject Photos contained the name of the doctor who achieved those results, but that he opted to remove HENDRICKS' name from the images and to use the Subject Photos as the center piece of PSWC's marketing efforts. The inevitable result of this conduct was to not only to imply that the results achieved in those images were results PSWC

had achieved, but also to attribute the source of the Subject Photos as being associated with PSWC. Dr. Menon testified that she knew the images were not of an actual PSWC patient, yet on the website, the statement indicates that the Subject Photos are one of their own patients. Finally, when PSWC opened an office in Orange County, it put HENDRICKS' name on the image that appeared on the Orange County billboard. Mr. Menon testified that he just happened to read an article about attributing credit and that is why he did so. This testimony makes no sense, and the implication is clear: PSWC knew that HENDRICKS was in Orange County and wanted to trade off his name and goodwill. This type of misleading advertising constitutes evidence of willfulness, which would more than justify relief to compensate plaintiff by virtue of the defendant's unjust enrichment. *Lindy Pen*, supra, at 1411.

### C. PLAINITFF WILL ALSO PROVE UNFAIR COMPETITION BASED UPON THE FALSE ADVERTISING CLAIM

Since common law claims of unfair competition, as well as *Business & Professions Code* Section 17200 claims, are substantially congruent to claims made under the Lanham Act (see *Cleary v. News Corp.*, 30 F.3d 1255, 1262 (9th Cir. 1994)), plaintiff will prevail on his unfair competition claim for the reasons noted above.

### IV. CONCLUSION

Plaintiff will prevail on his claims for copyright infringement, false advertising under the Lanham Act, and unfair competition.

DATED: March 18, 2014                SCHIFFER & BUUS, APC


By: /s/Eric Schiffer_____
      ERIC M. SCHIFFER
      WILLIAM L. BUUS
Attorneys for Plaintiff
DOUGLAS HENDRICKS, M.D.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and employed in Orange County, California.  I am over the age of eighteen years and not a party to the above-entitled action.  My business address is 3070 Bristol Street, Suite 530, Costa Mesa, CA 92626.  I hereby certify that on February 3, 2014, pursuant to agreement of the parties, I electronically served the foregoing **PLAINTIFF'S TRIAL BRIEF**  by transmitting via email or electronic transmission the document listed above to the person at the email address set forth below**:**

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 3, 2014 at Costa Mesa, California.

　　　　　　　　　　　　　　　　　　 */s/Eric M. Schiffer*
　　　　　　　　　　　　　　　　　　Eric M. Schiffer

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

<u>SERVICE LIST</u>

Andres Quintana
John Houkom
QUINTANA LAW GROUP
26135 Mureau Road, Suite 101
Calabasas, California 91302
Telephone: (818) 914-2100
Facsimile: (818) 914-2101
E-mail: andres@qlglaw.com
john@qlglaw.com

Keith Wileman
S. Martin Keleti
VEATCH CARLSON, LLP
700 South Flower Street, 22nd Floor
Los Angeles, CA 90017-4209
Telephone: (213) 381-2861
Facsimile: (213) 383-6370
E-mail: kwileman@veatchfirm.com
mkeleti@veatchfirm.com

Attorneys for Defendant PHYSICIANS SKIN & WEIGHT CENTERS, INC.

PLAINTIFF'S TRIAL BRIEF